Good morning, Your Honors. May it please the Court, my name is Mary Thurston, and I represent Mr. Yergashev and his wife, Ms. Dan Ghasiran. I would like to reserve two minutes for rebuttal. This case concerns a Muslim man from Uzbekistan who married a Mongolian woman who was Buddhist, and they applied for asylum ten months after their marriage. Counsel, this has to do with timing. It does. And the immigration judge did more than apply, did not apply a presumption about six months. The immigration judge gave a fuller explanation about why they would have been expected to apply sooner. And it's only, am I right about that, and it's only the BIA that adds this now defunct six months? I would disagree with you, Your Honor, because first, although the IAJ refers to a fuller explanation, he first looks to the part of the commentary which refers to an application that was filed after one year, and the commentary states that an application filed after one year would rarely be justified. However, Mr. Yergashev's application was filed within one year. The IAJ then goes on to state that because the application was not filed within six months, it was accordingly not reasonable. There, the IAJ does not cite to any law or give any reasoning behind the six months. Well, you know, a little bit of a problem that I think your client has is the IJ seems to, you know, give your client an opportunity about why, you know, why they want asylum, and rather than claim the Muslim-Buddhist card, says, well, we really like it here. It's really nice here and all of that. And then they have to, someone has to keep reminding them, well, don't you want to say something about being a Muslim and a Buddhist and that that's a problem? And there are several instances in the record where your client just seems to be a person that really just likes being here and we have a great life here and we'd like to stay. And then your client never gives any good reasons about why they didn't do it sooner. And I think your brief offers speculation but no contrary evidence. What you say is the BIA and the IJ could have taken into account that Mr. Yurgachev and his wife, Ms. Sangusuran, affirmatively applied for asylum, but that they might have taken time to investigate their possible courses of action, including moving to Mongolia or Uzbekistan, and that it might have taken a long period of time to receive communications from family members. That's just speculation. Your clients never give any good reasons about what they needed to do and why it took them time. I can address both of your points. It just seems like they want to be here and that that was their hook and they have to keep being reminded of it. I do agree that there's problems with the testimony. However, there's also the entire record to look to, which includes his asylum application, which explains how the mixed marriage would cause problems in him with returning to Uzbekistan because of problems of violence, because his fear that he would be ostracized and additionally that he would be unable to support his family. But the case law is against you on that. That's discrimination, the fact that you can't support your family. And so given that, he seems to, well, another one of his reasons, we like it here, but then also, well, I wouldn't be able to earn a good living. I couldn't support my family. And then the lawyer keeps going, well, what about the Buddhist and the Muslim? Economic persecution can be considered an addition as well as persecution, not just discrimination. My argument for as far as persecution goes is that the cumulative effects that are included within his application would rise to the level of persecution. However, the Court does not come to the merits of his asylum application based on the timeliness of his application. I want to go back to that. The BIA is applying this strict six-month rule, which we now know subsequently they have backed off and they have their own decision that says, no, you have to look at the individual circumstances. But what's interesting about the BIA's decision is it also adopts the decision of the immigration judge under Medoro-Burbano. So it really is, in that sense, giving two reasons. It says the IJ's reason is good, but we also have this six-month rule. The six-month rule is wrong, but the IJ's decision is still incorporated into the BIA's decision. And it did talk about the delay and explained factually why it was not reasonable, because they had known each other since 2002. They had been living together. He had been worried from the start. When they got married in 2004, it just wasn't reasonable for it to take that long. So right or wrong, the IJ at least considered the individual circumstances and did not apply an absolute bar. So I guess my question to you is, what is erroneous from a legal standpoint about that finding that it was unreasonable to wait more than six months after the marriage? It wasn't clear to me when I read the IJ's opinion that he had evaluated the particular circumstances of Mr. Yuryshev's case. He said that they had been married and accordingly it had ñ and lived together, but accordingly it wasn't reasonable. He didn't ñ Well, you know, he's ñ it may not be a model of magnificent writing, but it's clear at pages ñ or speaking, it's clear at pages 31 and 32 of the transcript that he says, I'm looking at your circumstances and whether it was reasonable to wait ten months. You had this relationship for two years before your marriage, then your marriage. You testified that you were worried from the start, and I just don't see a reason then in view of that why waiting all that time is reasonable. What's wrong with that? Well, the problem with that is that although he said, yes, they were married, and he was concerned from the beginning, it doesn't really allow for any ñ I think when the IJ states that it wasn't within six months of the marriage, that's coming from the termination of status section in the Federal Commentary, and it's not really allowing for the particular circumstances to be evaluated. It's not clear to me that the IJ was evaluating their particular circumstances. Well, what evidence did your client present to the court about what needed to be done before filing the asylum application? I don't see that your client did anything except wait ten months. Well, we do know that my clients at least were working on their application within the six months because the application was signed in June, which was six months after their marriage. But what information were they seeking? What did they do? Why couldn't they just get it in? I mean, it wouldn't be a good excuse to say, well, I only wrote one sentence a day to get it done. That wouldn't be a good excuse. They didn't say they were sick. They didn't say they needed to get certain documents. They didn't give us any reason for the delay. Right. We do know that the ñ that our clients were ñ had talked to their parents ñ Mr. Yurgachev had talked to his parents in Uzbekistan about the marriage. So we do know they were at least evaluating what would happen if they had returned to Uzbekistan. You have about a minute and a half left if you'd like to say of any rebuttal. I would like to. Thank you. Thank you. Good morning. May it please the Court. My name is Carrie Monaco, and I represent the respondent, Attorney General Eric Holder, in this matter. Counsel, I have some questions for you that are in the Ventura neighborhood. Yes. Because the BIA clearly was applying a rule that it no longer ñ I disagree with that. The most recent decision from the board ñ I'm assuming you're referring to matter of TMH. Is that correct? Yes. Matter of TMH did not talk about a six-month rule. There's nothing in that decision at all about a six-month presumption. What that case dealt with was referring to language in the preamble of the regulations on whether there's an automatic one-year extension or one-year tolling in which ñ No, but it went beyond that, too, to talk about the ñ what a reasonable period means and the fact that there isn't ñ there isn't anything automatic about the time, that it has to be dealt with on an individualized basis without any presumption of time. Correct. Okay. And are you saying that that does not apply to this situation at all, that there's a six-month presumption? I'm saying that the six-month presumption is still very well effective. I don't necessarily think that that was the basis for why the board or the IJ decided this case. I think it's ñ Wait, wait, wait, wait. Sure. TMH came after the board's decision in this case. Correct. Do we have any decision from the board in which it analyzes the so-called six-month rule for what we're talking about in light of TMH, or are we guessing? No. We have cases from this Court in Husiev referring to board decisions that ñ and the preamble referring to a six-month presumption for termination of status cases. My argument is that there is no difference in the language between the termination of status, extraordinary circumstances exception, and changed circumstances exception. Okay. But we don't have anything from the BIA that analyzes that. No. Okay. So let ñ stay with me, because it seems to me that notwithstanding the hard time I gave opposing counsel, that the IJ as well as the BIA is referring to the six months because at the bottom of page 31 of the transcript, he's ñ after discussing their individual circumstances, he says, a delay of more than six months after the marriage, and he goes on, is not reasonable, and then the BIA explicitly says six months is the deal. So under Ventura, shouldn't we give the BIA an opportunity to square these two things? Not on that issue, because before TMH and after TMH, the rule has always been that it's the petitioner's burden to show that his individual circumstances warrant whatever time period there was for filing, and to prove that his particular circumstances were a reasonable delay. TMH did not change that. My reading of TMH is because the immigration judge in that case had set an automatic one-year rule, there was no testimony or no information presented from the alien to explain why it took nine months to file. In that case ñ But here there was a six-month rule that was in essence applied by both the IJ and the BIA. Well, and I argue that that is ñ the six-month rule is in the preamble to the regulations, and yes, it is in the termination of status provision, but I would argue that it's My concern is how can we do that without letting the BIA in some sort of presidential opinion, or even a non-presidential opinion, think about that issue expressly and decide whether your argument is correct? How can we do that under Ventura when they haven't analyzed it at all yet? Well, I don't think we need to even get to that issue necessarily, because in this case, the petitioner failed to present any evidence to explain his own delay. Whether there is a six-month presumption or not, he would still need to provide some reason for the delay. Except that that's kind of a harmless error review, which we can't do in agency cases under SEC v. Chenery. I mean, we can do that when we have supervisory authority over the district court. If they're right for the wrong reason, no problem. We'll find the right reason and affirm. We can't do that with agencies, and the Supreme Court keeps reminding us that we can't do that in particular with the BIA. So... Well, I mean, my argument, again, is that I don't think that the six-month basis was or the six-month rule was the basis for the agency's decision. As you noted when speaking with my opposing party, the immigration judge, yes, referred to a six-month, perhaps a six-month presumptive deadline, but specifically spoke about why the facts of this case would not... That's what informed, at least in the I.J.'s words, informed the reasonableness inquiry. It was whether it was reasonable not to do it within six months. The question did not seem to be asked, was it reasonable to do it in ten months? Rather, was it reasonable not to do it within the first six months? So it kind of asked the wrong question, I guess, is my concern, or potentially the wrong question. I know you think it's the right question, but we don't know that. Yes. I do understand your concerns, but ultimately, whether under the, you know, the preamble, the language of the regulations and TMH, it's still the burden to show a reasonable period. But if there was some sort of, you know, automatic... So are you arguing that since there was no evidence, one day wouldn't have been reasonable? Not necessarily, no. I do believe that people need a reasonable time in which to file their application. In this case, the Petitioner testified that he expected problems in Uzbekistan as soon as he began dating his wife, back in 2001, 2002, which was two years prior to the marriage. And the IJ referenced that testimony in his analysis of the reasonable period. And based on that testimony, there's really no reason to understand why it took more than six months or ten months or any extended period of time in which to file the application. I'm having difficulty, counsel. Maybe you can clear it up. Are you taking the position that the IJ and subsequently the BIA found that ten months was an unreasonable period of time on any basis other than its statement that there was a six-month delay? Is my argument that — I'm sorry, can you repeat? Didn't they — didn't both the IJ and the BIA determine that this was an unreasonable delay because of the six-month provision? Because it was beyond. No. I believe that the — How can you say that? Listen to this. A delay of more than six months after the marriage in January 2004 to request asylum is accordingly not reasonable. Correct. Isn't that the sole basis of finding it's not reasonable? Because the IJ's finding, perhaps in these particular circumstances, based on the marriage and based on his testimony of how soon he knew that he may face problems, that more than six — But you didn't say that because of what he knew before, because of their longstanding relationship or anything else, that the only — the only thing cited was the six-month  Accordingly, that's not reasonable. And the BIA did — I'll just supplement. It's the same thing. Waiting in excess of six months to apply for asylum after the change in circumstances would not be considered reasonable, citing the thing you would like them to cite. Accordingly, we uphold the finding. Correct. That's the BIA. Correct. But I also believe that — well, the Board, as you noted before, adopted and affirmed the immigration judge's decision. So the immigration judge's analysis is also relevant, and I — It is. It is, although in this instance, to the extent they're inconsistent, if they are, then we have yet another problem with the BIA's decision, because it seems to me that the BIA, at least, clearly is making a decision only on the ground that there's a six-month presumption of unreasonableness. And if we can't tell — if it's in conflict and they purport to be doing both, don't we still have to send it back to them? Well, I think in this case, the immigration judge, having analyzed the particular facts of the case, I think was, yes, referring to a — that six months in this case would have been sufficient, but beyond six months, there's no explanation for why it should — I mean, he should find that 10 months was — was reasonable based on the particular testimony and the particular facts of this case. And before — before we — before your time runs out, I have one more question. It's my understanding from the posture of this case that both of the Petitioners are deemed credible. There's no adverse credibility finding. Correct. Okay. Thank you. Thank you. Ms. Thurston, you have a little bit of time remaining. Your Honors, I would just like to point out that there is a difference between the termination of status commentary as well as the change in circumstances commentary. And with matter of TMH, the Board has clarified that when there's a particular change in circumstances — or when there's a change in circumstances, the particular circumstances must be evaluated. And so they did not adopt a six-month filing deadline for a change in circumstances. Furthermore, at the time of Mr. Yergeshev's case, it was unclear what the correct standard — or the standard — what standard would be applied to the timeliness of this filing. Although the regulation states it must be filed within a reasonable period, the reasonable period is not defined by the regulations. You only have the commentary to go by. And because at the time the IJs were applying the commentary differently, it was unclear that Mr. Yergeshev would have to present any more evidence that he had. We know with matter of TMH, there was a — the IJ made a presumptive one-year automatic extension. And in Wray GLC, the dissenting judge also alluded to the fact — or said that he would hold that a one-year period would be reasonable. And so the fact that — I'm out of time. I would like to conclude. And thank you, Your Honors. Thank you. We appreciate the arguments of both counsel. And again, thanks to pro bono counsel. The case is submitted.
judges: Graber, Callahan, Bea